IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 7 |
| | ) | |
| ERNESTINE RANDLE, | ) | Case No. 06 B 05929 |
| | ) | |
| Debtor. | ) | Judge Carol A. Doyle |

## MEMORANDUM OPINION

The United States Trustee for the Northern District of Illinois (the "Trustee") has moved to dismiss this case under 11 U.S.C. § 707(b)(1) as an abuse of the provisions of Chapter 7 of the Bankruptcy Code. The Trustee asserts that the debtor, Ernestine Randle, has income as calculated under § 707(b)(2) (the "means test") high enough to create a presumption of abuse. Ms. Randle counters that her monthly disposable income falls below the thresholds set forth in § 707(b)(2). At issue is whether a debtor may deduct from her current monthly income the installment payments due on secured debt when she intends to surrender the collateral after filing the case. The court concludes that Ms. Randle is entitled under § 707(b)(2)(A)(iii) to deduct her current mortgage payments in determining her monthly disposable income under the means test. The Trustee's motion is therefore denied.

### I. The Means Test

Section 707(b)(2) of Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), contains a mechanism called "the means test" for measuring a debtor's presumed ability to repay her debts in the 60 months following the

bankruptcy filing. Under the means test, if the debtor's "current monthly income"[1] less specified allowable expenses would permit the debtor to pay over the course of 60 months either (1) $10,000, or (2) 25 percent of her non-priority unsecured debt or $6,000 (whichever is greater), then her case is presumed to be an abuse of Chapter 7. 11 U.S.C. § 707(b)(2)(A)(i). The means test was designed to determine whether the debtor could pay a significant amount to creditors in a Chapter 13 case. The 60-month period in this provision corresponds to the maximum term of a case under Chapter 13 of the Bankruptcy Code, and other provisions of § 707(b)(1) allow a debtor to deduct expenses that would be incurred in a Chapter 13 case from her current monthly income.

Section 707(b)(2)(A)(i) provides that the court shall presume abuse if "the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii) and (iv), and multiplied by 60 is not less than the lesser of" the threshold amounts set forth above. Section 707(b)(2)(A)(iii) provides that the amount of secured debt to be deducted from current monthly income "shall be calculated" as "the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition...."[2] The

---

[1] "Current monthly income" is defined in 11 U.S.C. § 101(10A).

[2] The full text of § 707(b)(2)(A)(iii) is as follows:

    (iii) The debtor's average monthly payments on account os secured debts shall be calculated as the sum of -

        (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and

        (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the

issue in this case is whether the debtor may deduct the amount owed on secured debt if she intends to surrender the collateral after filing her bankruptcy petition.

## II. Factual Background

Ms. Randle filed her Chapter 7 petition and all of the schedules and other documents required by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, including her Form B22A calculation under the means test and her Statement of Intention regarding secured debt. Line 42 of Form B22A tracks the statutory language of § 707(b)(2)(A)(iii). It requires the debtor to identify each secured debt and state the average monthly payment on the debt, which is defined as "the total of all amounts contractually due to each Secured Creditor in the 60 months following the filing of the bankruptcy case," divided by 60. Ms. Randle listed exactly what the form requested -- her mortgage payment and her car payment based on the amounts due under her contracts with respect to those secured claims. She also filed a Statement of Intention in which she stated that she intended to surrender her home rather than reaffirm or redeem that debt. After deducting all allowed expenses, her form B22A shows that Ms. Randle has negative monthly disposable income for purposes of the means test.

The Trustee filed a Statement of Presumed Abuse alleging that Ms. Randle's current monthly income less the allowed deductions (her "disposable income"), when multiplied by 60,

> debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;

divided by 60.

11 U.S.C. § 707(b)(2)(A)(iii).

yields an amount greater than the $10,000 threshold set forth in § 707(b)(2)(A)(i). Instead of using her actual mortgage payment for her housing expense, the Trustee used the standard housing deduction of $980 per month (based on the housing deduction in the IRS Local Standards for a debtor in Ms. Randle's position), and calculated that Ms. Randle has $786 in monthly disposable income. Multiplying this amount by 60 equals $46,138.20, which far exceeds the $10,000 threshold of § 707(b)(2)(A)(i). The Trustee asserts that the debtor should not be allowed to use her actual mortgage payment in this calculation because she intends to surrender the property and the stay has already been lifted with respect to the property. Therefore, the court must determine whether § 707(b)(2)(A)(iii) permits a debtor to deduct her actual mortgage payment from her current monthly income when she intends to surrender her home to the mortgage company.

### III. Section 707(b)(2)(A)(iii)

When interpreting any statute, "we [must] begin with the language of the statute itself." In re T. H. Orlando, Ltd., 391 F.3d 1287, 1291 (11th Cir. 2004); see also Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980) ("[T]he starting point for interpreting a statute is the language of the statute itself."). Here, the plain language of § 707(b)(2)(A)(iii) says that the debtor "shall" deduct the amounts "scheduled as contractually due in each month of the 60 months following the date of the petition." It does not say that the debtor can deduct this amount only if she intends to keep the collateral post-petition. It does not say that the debtor can deduct this amount only if she intends to continue making the payments due post-petition. And it

does not refer to the debtor's Statement of Intention with respect to the collateral. The provision requires the court to consider only the amounts due under the contract itself.

### A.   Congressional Intent

The Trustee apparently recognizes this, because his primary argument is that the court must look to general Congressional intent with respect to BAPCPA and § 707(b) as a whole in interpreting § 707(b)(2)(A)(iii). He contends that the purpose of BAPCPA and § 707(b) was to force debtors who could afford to pay their creditors out of Chapter 7. He therefore urges the court to interpret § 707(b)(2)(A)(iii) to permit deduction of secured debt payments only if the debtor intends to keep the collateral so that the means test more accurately reflects the debtor's post-petition ability to pay her creditors. Thus, the Trustee asks the court to ignore the actual words used by Congress to achieve a result that is more consistent with his view of overall Congressional intent.

The Trustee's argument is not persuasive for several reasons. First, it ignores the cardinal rule of statutory interpretation -- that the court must first look to the language of the statute to determine Congressional intent. U.S. v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989) ("The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.") (citations omitted). The plain language of § 707(b)(2)(A)(iii) requires the debtor to deduct the amount due under her contracts for secured debt regardless of whether she intends to redeem, reaffirm or surrender the property. If Congress had intended otherwise, it could easily have said so, excluding secured debt when the debtor has stated an intention to surrender the

collateral. Or Congress could have specified that only payments the debtor actually intended to make post-petition should be deducted from income. But Congress did neither. Congress' choice of language shows a clear intent not to impose any such limit on debtors.

Second, even if Congressional intent is considered, the legislative history of the means test supports the court's interpretation of § 707(b)(2)(A)(i). To the extent it is discernable, Congress' intent in enacting the Means Test was to create a "mechanical" formula for presuming abuse of Chapter 7. See Report of the Committee on the Judiciary, House of Representatives, to Accompany S. 256, H.R.Rep. No. 109-31, Pt. 1, p. 553, 109th Cong., 1st Sess. (2005) ("[T]he formula remains inflexible and divorced from the debtor's actual circumstances.") (dissenting views); see also In re Barr, 341 B.R. 181, 185 (Bankr. M. D. N. C. 2006) ("[I]t appears that Congress intended to adopt a specific test to be rigidly applied rather than a standard to be applied according to the facts and circumstances of the case."); In re Farrar-Johnson, No. 06 B 3089, 2006 WL 2662709, *5 (Bankr. N. D. Ill. Sept. 15, 2006) ("Eliminating flexibility was the point: the obligations of chapter 13 debtors would be subject to "clear, defined standards," no longer left "to the whim of a judicial proceeding."); see generally Susan Jensen, A Legislative History of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 79 Am. Bankr. L.J. 485 (2005).

Congress' intent to use a standardized or mechanical test and avoid reliance on individualized information as much as possible is demonstrated throughout § 707(b)(2). For example, the majority of expenses that can be deducted from current monthly income under § 707(b)(2)(A) are based on national or local standards issued by the Internal Revenue Service, not the debtor's actual or expected expenses. National IRS standards apply to expenses related to

food, housekeeping supplies, apparel, personal care and miscellaneous expenses. See Eugene R. Wedoff, Means Testing In the New § 707(b), 79 Am. Bankr. L.J. 231, 251-61 (2005). Local IRS standard amounts apply for transportation and housing/utility expenses. Id. at 256-61. Section 707(b)(2)(A)(ii)(I) allows debtors to use actual expense figures only for a limited group of "other necessary expenses" permitted under the IRS standards, which includes expenses many debtors might not incur at all or that are more difficult to estimate on a standardized basis, such as actual taxes paid, child care expenses, student loan expenses and charitable deductions. Thus, Congress adopted a test for the presumption of abuse that relies primarily on standardized estimates of expenses, not the debtor's actual expenses.

Consistent with this standardized approach, Congress dictated in § 707(b)(2)(A)(iii) that a debtor's secured debt expense be calculated using a simple formula. The monthly amount to be deducted for secured debt is calculated by dividing the total amount due under the contract over the next 60 months by 60. Congress chose not to differentiate between debtors based on their stated intention to redeem, reaffirm or surrender the collateral. Perhaps this is because there is so much uncertainty connected with a debtor's statement of intention. For example, a debtor might state an intention to reaffirm but the creditor might refuse to agree, preferring to take the collateral back because of the debtor's bad payment history. Or the debtor might be able to reaffirm the debt at a more favorable interest rate or lower monthly payment. Or the debtor might state an intention to redeem but later be unable to obtain redemption financing. Whatever the reason, the mechanical approach contained in § 707(b)(2)(A)(iii) for secured debt payments is consistent with Congress' intent to create a standardized test rather than one based on a debtor's actual circumstances. In fact, the Trustee's interpretation of § 707(b)(2)(A)(iii) is completely

-7-

contrary to Congress' intent because it requires the kind of case-by-case adjustment based on a debtor's individual circumstances for the presumption of abuse that Congress rejected. See, e.g., In re Nockerts, No. 06-24480-svk, 2006 WL 3689465, *5 (Bankr. E. D. Wis., Dec. 14, 2006) ("[C]ourts should apply the means test as it was constructed and should not attempt to tamper with it to achieve a particular result in a particular case.").

Finally, the court notes that, in any event, the Trustee's assertion that Congress' general intent was to require some debtors to repay their creditors does not help to resolve the specific issue at hand. The question presented here is not whether Congress intended to force some debtors out of Chapter 7 but where Congress intended to draw the line for purposes of the presumption between debtors who are entitled to relief under chapter 7 and those who are not. Evidence of general Congressional intent to draw such a line is of little help in determining where, exactly, that line is drawn. The specific language of § 707(b)(2)(A)(iii) requiring debtors to deduct their secured debt payments from current monthly income controls over any generalized intent of Congress with respect to BAPCPA or even § 707(b)(2) as a whole. See In re Oliver, No. 06-30076RLD13, 2006 WL 2086691, at *3 (Bankr. D. Or. June 29, 2006); see also Nat'l Cable & Telecomms. Ass'n, Inc. v. Gulf Power Co., 534 U.S. 327, 335 (2002) ("[S]pecific statutory language should control more general language when there is a conflict between the two.").

For all of these reasons, the court rejects the Trustee's contention that general Congressional intent to force debtors who can repay their debts out of Chapter 7 requires the court to rewrite § 707(b)(2)(A)(iii) so that it applies only to debtors who intend to reaffirm their secured debt.

**B.     Other Arguments**

The Trustee makes four other arguments in support of his position. First, the Trustee argues that the court's interpretation of § 707(b)(2)(A)(iii) ignores the word "due" in the phrase "amounts scheduled as contractually due to secured creditors in each of the 60 months following the date of the petition." He seems to suggest that the debtor's payments on her mortgage will not be "due" during the 60 months after filing because the debtor will surrender the property to the mortgage company after the petition is filed.

However, the debtor must fill out Form B22A as of the petition date, and on that date her mortgage payments were "due" under the contract whether the debtor planned to make them in the future or not. The filing of a bankruptcy petition does not abrogate that obligation. The automatic stay suspends the creditor's right to foreclose on the collateral, and the debtor may ultimately be discharged of her liability to the mortgage company beyond the value of the collateral. But the filing of the bankruptcy petition does not alter the debtor's contractual obligations under the note and mortgage agreement to make monthly payments until the debt is repaid. Therefore, the debtor's mortgage payments are "due" under the contract for the next 60 months and may be deducted from her monthly income under § 707(b)(2)(A)(iii).

Second, the Trustee argues that Congress' use of the word "scheduled" in § 707(b)(2)(A)(iii) was intended to mean "in the Bankruptcy Schedules." He makes this argument in the process of criticizing the decision in In re Walker, No. 05-15010-WHD, 2006 WL 1314125 (Bankr. N. D. Ga. May 1, 2006), for using the ordinary meaning of the word "scheduled" in concluding that it refers to payments scheduled under the contract. The Trustee asserts that the court should rely on the meaning of "schedule" in other provisions of the

Bankruptcy Code, in which the term refers to "bankruptcy schedules" a debtor must file in connection with her petition.

This argument is flawed for several reasons. First, the Trustee fails to explain how this argument supports his contention that secured debt may not be deducted from income if the debtor does not reaffirm the debt. There is no bankruptcy schedule that requires the debtor to list "all amounts contractually due to secured creditors in each month of the 60 months following the date of the petition." So there is no bankruptcy schedule to which § 707(b)(2)(A)(iii) could refer. Second, Schedule J, which lists the expenses of the debtor as of the petition date, normally includes mortgage and car payments due as of that date, whether the debtor is reaffirming the debt or surrendering the collateral. In this case, the debtor correctly lists her mortgage payment on her Schedule J. So, even if the court were to refer to the debtor's bankruptcy schedules to determine the amount "scheduled as contractually due," her Schedule J in fact reflects the monthly payment due under her mortgage. Third, the Trustee's argument ignores the context of this provision, which clearly requires the debtor to list payments "scheduled" under secured debt instruments, virtually all of which call for installment payments that are scheduled to be paid on a monthly basis.

Next, the Trustee argues that courts adopting this court's interpretation of § 707(b)(2)(A)(iii) mistakenly adopt a "historical" or "backward-looking" view of expenses under the means test, and that the "language used on the expense side of the equation is all forward looking." Compare Walker, 2006 WL 1314125 with In re Harris, No. 05-87033, 2006 WL 2933891 (Bankr. E. D. Okla. Oct. 13, 2006). However, generalized descriptions of the nature of the expenses under the means test are not persuasive given the specific statutory

language in § 707(b)(2)(A)(iii) dictating that the debtor deduct amounts contractually due on her secured debt - period. This provision calls for a snapshot of the debtor's obligations on the date of the petition. See In re Nockerts, No. 06-24480-svk, 2006 WL 3689465, *6 (debtor's expenses should be viewed as "snapshot" on date of filing); In re Crittendon, No. 06-10322 C-13G, 2006 WL 2547102, at *3 (Bankr. M.D.N.C. Sept. 1, 2006) ("[T]he application of the provisions of section 707(b)(2) involves a snapshot evaluation of the debtor's financial condition on the petition date such that a surrender of collateral arguably may be irrelevant and inconsequential."); Walker, 2006 WL 1314125, at *6 ("Congress intended for the means test to be applied based on the facts in existence at the time of the filing, without reference to what the debtor will do in the future.").

Finally, the Trustee argues that the court's interpretation of § 707(b)(2)(A)(iii) somehow prevents him from performing his duty under § 704(b)(1) to review all of the materials filed by the debtor, including the Statement of Intention. However, the Trustee's duty to review documents filed in a bankruptcy has nothing to do with the proper interpretation of § 707(b)(2)(A)(iii).

## IV. Conclusion

For the reasons stated above, the court concludes that the debtor may deduct her mortgage payments from her current monthly income for purposes of the means test. The Trustee's motion to dismiss this case based on a presumption of abuse under § 707(b)(1) is denied.

December 19, 2006

ENTERED:

_____
CAROL A. DOYLE
United States Bankruptcy Judge